**PUGET SOUND PRODUCTION
CREDIT ASSOCIATION,
Plaintiff-Appellee,**

v.

**OIL SCREW JOHNNY A, in rem, et
al., Defendants,**

and

**David Olney, Interested
Party, Appellant,**

v.

**John Hinchman, Interested
Party, Appellee.**

**Nos. 85–4250, 85–4395.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 5, 1986.

Decided June 9, 1987.

Kenneth P. Leyba, Parry Grover, Anchorage, Alaska, for plaintiff-appellee.

Charles W. Ray, Anchorage, Alaska, for interested party appellant.

Brian Carter Boyd, Anchorage, Alaska, for interested party appellee.

Before SKOPIL, FLETCHER and POOLE, Circuit Judges.

FLETCHER, Circuit Judge:

Olney appeals from the district court's refusal to confirm the sale of a vessel to him and its approval of a second sale of the vessel to another party. We affirm.

## BACKGROUND

On May 30, 1985, the Oil Screw "Johnny A" ("Johnny A") was auctioned at a public Marshal's sale in Sitka, Alaska. Olney was the high bidder at $410,000. On June 7, 1985, Hinchman filed a timely objection to the sale and offered a bid of $451,000, a ten percent increase over Olney's bid. In his objection, Hinchman stated that pursuant to District of Alaska Local General Rule ("LGR") 29 [1] and District of Alaska Local Admiralty Rule ("LAR") 11(H)(1),[2] his bid barred confirmation of the sale to Olney. Nevertheless, five days later, Olney moved to have the May 30 sale confirmed under LAR 11(G)(2).[3]

In proceedings before a magistrate, Olney argued that he was entitled to confirmation because there was no fraud, collusion, or gross inadequacy in price, these

1. Local General Rule ("LGR") 29, entitled "Judicial Sales: Confirmation," provides:

   No judicial sale made pursuant to order of this Court may be confirmed if, before or at the time set for confirmation, a bid is presented which is ten percent (10%) or more in excess of the highest bid received at the sale. In this event, a new sale will be held by the Court at the time of hearing of the motion or petition for confirmation. However, this rule does not prevent the Court from refusing to confirm and hold a new sale if a higher bid is presented although the amount of increase is less than ten percent (10%).

2. Local Admiralty Rule 11(H) deals with objections to sales; subsection (1) provides:

   *Manner and Time for Objecting.* A person may object to the sale by filing a written objection with the Clerk and depositing a sum with the Marshal which will pay the expense of keeping the property for at least 10 days. Payment to the Marshal shall be made in cash, or by certified check or cashier's check. The objector must give written notice of the objection to the successful bidder and the parties to the action.

   The written objection must be endorsed by the Marshal with an acknowledgment of receipt of the deposit prior to filing. The objection must be filed within 10 days after the sale, excluding Saturdays, Sundays, and holidays.

3. Local Admiralty Rule 11(G) describes confirmation procedures:

   (1) *Without Objection.* A sale shall stand confirmed as of course, by the Court, unless (a) a written objection is filed within the time allowed under these rules, or (b) the purchaser is in default for failing to pay the balance due the Marshal.

   (2) *On Motion.* If an objection has been filed, or if the successful bidder is in default, the Marshal, the objector, the successful bidder, or a party may move the Court for relief. The motion will be heard summarily. The person seeking a hearing shall apply to the Court for an order fixing the date of the hearing and directing the manner of giving notice, and shall give written notice of the motion to the Marshal and all persons who have an interest. The Court may confirm the sale, order a new sale, or grant such other relief as justice requires.

being the common law bases for refusal of confirmation. Olney relied on *Ghezzi v. Foss Launch & Tug Co.*, 321 F.2d 421, 425 (9th Cir.1963). Olney also claimed that Hinchman could not use LGR 29 to avoid confirmation for two reasons. First, Olney argued that LGR 29's mandatory prohibition of confirmation where a ten percent higher bid is received, *see supra* note 1, conflicts with the discretionary language of LAR 11(G)(2), *see supra* note 3 ("The Court may confirm the sale, order a new sale, or grant such other relief as justice requires."), and, in cases of conflict between Local General Rules and Local Admiralty Rules, the Admiralty Rules prevail. See LAR 1.[4] Second, Olney asserted that LGR 29 was a substantive rule, as opposed to a procedural rule, and as such was beyond the district court's rule-making authority.

The magistrate, in a report and recommendation, denied Olney's motion to confirm and recommended that a new sale be held. Over Olney's timely objections, a second sale was conducted by the magistrate on June 24, 1985. Hinchman prevailed with a bid of $467,000, an increase of $57,000 over Olney's bid at the first sale. After again considering Olney's objections to the refusal to confirm the sale of the Johnny A to him, the magistrate, on July 9, 1985, issued a final report and recommendation affirming his initial report and recommendation. The district court, in a memorandum and order filed August 8, 1985, accepted and adopted the magistrate's final report and recommendation, thus denying Olney's motion to confirm the original sale and approving the holding of the second sale. *Puget Sound Prod. Credit Ass'n v. Oil Screw "Johnny A"*, No. A 84-495 CIV. (D. Alaska August 8, 1985). The district court noted the possible conflict between the mandatory language of LGR 29 and the discretionary language of LAR 11(G)(2), but found that

except in unusual circumstances, the existence of an upset bid at least ten percent above the original sale price will indicate that the original sale price was grossly inadequate. In such a situation, even under LAR 11(G)(2), the Ninth Circuit's ruling in *Ghezzi* would mandate that the court hold a new sale.

... In light of Hinchman's bid of $451,-000, $41,000 over Olney's original successful bid of $410,000, ... the original sale price was grossly inadequate. Thus, under LGR 29, or LAR 11(G)(2) supplemented by *Ghezzi*, the court was warranted in ordering that a new sale be held.

*Id.*, slip op. at 4.

On September 3, 1985, the district court granted Hinchman's motion to confirm the second sale, and on September 5, the Johnny A was released to Hinchman.[5]

## DISCUSSION

We review the district court's refusal to confirm the sale of the Johnny A to Olney for an abuse of discretion, *Ghezzi*, 321 F.2d at 425, and will not find an abuse of discretion unless the court's factual findings are clearly erroneous or incorrect legal standards were applied. *SEC v. Carter Hawley Hale Stores, Inc.*, 760 F.2d 945, 947 (9th Cir.1985). The applicable legal standards are reviewed *de novo*. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

Olney argues that this case is governed by our holding in *Ghezzi*, 321 F.2d at 425, which permits a district court to refuse confirmation of a judicial admiralty sale for inadequacy of price only if the price bid is "grossly inadequate." He asserts that his bid was not grossly inadequate and thus confirmation was required by *Ghezzi*. Ol-

**4.** Local Admiralty Rule 1, in pertinent part, provides:

The General Rules and Civil Rules apply to all civil cases, including admiralty and maritime proceedings, but if in any instance one of those rules is inconsistent with an Admiralty Rule, the Admiralty Rule shall control where applicable.

**5.** Hinchman asserts that with release of the vessel, jurisdiction to fashion the relief Olney seeks was lost. Because we find that Olney is entitled to no relief, we do not reach this jurisdictional problem.

ney further argues that LGR 29, which prohibits confirmation when an upset bid exceeding the sale price by ten percent is received, *see supra* note 1, is inapplicable to vessel sales because it conflicts both with *Ghezzi* and with LAR 11's grant of discretion over confirmation decisions.

### The Applicability of Ghezzi

In *Ghezzi*, a tug was sold at a court-ordered sale for $41,000, but prior to confirmation an upset bid of $50,000 and objection to confirmation were filed. The district court ordered the $41,000 sale confirmed. In reviewing the district court's determination, the *Ghezzi* court relied on a passage from Corpus Juris Secundum:

> "Until confirmation, a sale in an admiralty proceeding may be set aside at any time. The power of an admiralty court to set aside a sale comes from its general power over its decree, but great caution should be exercised in disposing of motions to set aside sales duly made under the provisions of a decree of the admiralty court. A sale may be set aside ... *for the inadequacy of a price, provided the inadequacy is gross, and is such as amounts to either fraud or unfairness.*" (Emphasis added.)

*Ghezzi*, 321 F.2d at 425 (quoting 2 C.J.S. Admiralty § 168f at 292 [now § 247 at 369]) (citations omitted). The court found that the $9,000 increase in bid did not permit it to "say as a matter of law that the price was so grossly inadequate that this fact in itself constituted an abuse of discretion." *Id.* At the same time, however, the court stated that it "might well conclude that the increase in bid would have justified the trial court in reopening the sale." *Id.* The *Ghezzi* court thus did not hold that confirmation was mandatory, but rather that it was within the district court's discretion to confirm that particular sale.[6]

Under *Ghezzi*, a district court should not refuse to confirm a bid unless it is "grossly inadequate." 321 F.2d at 425. In *Ghezzi*, however, there is no indication that the upset bid and objection were submitted while confirmation awaited the running of a set time period for objections.[7] In contrast, the sale of the Johnny A to Olney could not be confirmed until a ten-day period for objections had run. *See* LAR 11(G)(1), (H)(1), *supra* notes 3 & 2. The relevance of this difference in procedural posture is made clear by a section of Corpus Juris Secundum that was not cited or relied on by the *Ghezzi* court:

> [I]t is required that a judicial sale in an admiralty proceeding be confirmed before it is final, and before the purchaser has a right to the property; and, until confirmation, the judgment rests in the discretion of the court.
>
> Confirmation should not be refused except for substantial reasons. While the court will not refuse to confirm a bid merely because higher bids are in sight, ... *where a judgment of confirmation is ordered held for a specified time sub-*

---

6. Courts have employed a wide range of standards in determining whether confirmation should be denied for inadequacy of price. *See Munro Drydock, Inc. v. M/V Heron*, 585 F.2d 13, 16 (1st Cir.1978) ("[I]f there are very major disparities between the high bid at the sale and both the appraised value and upset bid, confirmation should be withheld...."); *Lambert's Point Towboat Co. v. United States*, 182 F. 388, 389–90 (4th Cir.1910) (Inadequacy of price alone is not sufficient; there must be either fraud or unfairness. Where boat originally sold for $10,000, upset bid of $11,000 sustains conclusion that $10,000 bid was inadequate and unfair.); *Quinn v. S.S. Jian*, 235 F.Supp. 975, 977 (D.Md.1964) ("Confirmation of the sale should not be refused except for substantial reasons."); *The Planter*, 163 F. 667 (E.D.S.C. 1908) (Inadequacy of price alone is not sufficient to warrant refusal of confirmation.); *The*

*New Hampshire*, 18 F.Cas. 76, 77 (E.D.Mich. 1877) (No. 10,160)("[U]ntil confirmation, the sale may at anytime be set aside, and a resale ordered.").

7. In *Ghezzi*, the upset bid and objections to the sale were filed twenty days after the sale. 321 F.2d at 423. The opinion does not disclose the existence of any local court rule that provided for a period during which sales could not be confirmed. It is highly unlikely, however, that, if such a rule did exist, the time period provided for would have been as long as twenty days. Under the rule currently in force in the jurisdiction where *Ghezzi* arose, admiralty sales stand confirmed as of course unless an objection is filed within three days after the sale. *See* Western District of Washington Local Admiralty Rule 145(e)(1), (f)(2).

*ject to objection, and during that time an increased bid is received from a third party ..., the court will not sacrifice the property at the original bid.* 2 C.J.S. Admiralty § 245 at 367–68 (footnotes omitted) (emphasis added).

In our case, Hinchman filed an objection and increased bid seven days after the public sale, within the ten-day period provided by LAR 11(H) for objections to sales and during which period confirmation is precluded. Under such circumstances the court may refuse to confirm rather than "sacrifice the property at the original bid." *Id.*

■ Under the local admiralty rules, Olney's bid was, in effect, conditional during the ten-day preconfirmation period. In consideration of the conditional nature of the sale, we find that something less than "gross inadequacy" justifies a refusal to confirm. Pursuant to the procedures of LAR 11, a *substantial* increase over the initial bid warrants the holding of a new sale. *See* 2 C.J.S. Admiralty § 245 at 367. *Cf. The Sue,* 137 F. 133 (E.D.N.C.1905) (holding that where court ordered confirmation to be held for five days subject to objections, timely objection providing "reasonable" grounds warranted setting aside the sale).

■ Although a "substantial disparity" requirement may render an initially successful bidder somewhat more vulnerable to being overthrown during the preconfirmation period than a "grossly inadequate" requirement, this result is not inconsistent with the bidder's legal status. An unconfirmed bid carries with it no right in the bidder to have the sale consummated. *The New Hampshire,* 18 F.Cas. 76, 77 (E.D. Mich.1877) (No. 10,160). In the words of Judge Learned Hand, "Though his position changes upon confirmation, until then a bidder is not a purchaser, but merely an offerer to the court, which accepts his bid only by the confirming order." *The East Hampton,* 48 F.2d 542, 544 (2d Cir.1931). Whether to accept or reject the bidder's

offer "is within the sound discretion of the court, to be exercised with due regard to the special circumstances of the case and to the stability of judicial sales." *The Sue,* 137 F. at 134. If a court, in the face of higher bids, decides to confirm the original bid, it is not because the original bidder has a right to the property, but rather because it is thought that the failure to confirm will discourage participation at judicial sales. *The East Hampton,* 48 F.2d at 544.

The policy of maintaining confidence in judicial sales is not seriously offended by procedures, such as those under LAR 11, that permit upset bids within specified time limits. Judge Browning, disagreeing with the first confirmation of sale in *Ghezzi,* commented that "[j]udicial sales of property in state court proceedings are not noticeably impeded by statutory provisions requiring that such sales be upset as a matter of course upon the receipt before confirmation of a bid exceeding the previous high bid by ten per cent." *Ghezzi,* 321 F.2d at 427 (Browning, J., concurring). At a minimum, the policy favoring confirmation of the original prevailing bid as a means to foster confidence in judicial sales must be balanced against the purpose of such sales, which is to obtain a good price so as to benefit both debtor and creditor. *Munro Drydock, Inc. v. M/V Heron,* 585 F.2d 13, 14 (1st Cir.1978).

In sum, we conclude that where a rule governing admiralty sales withholds confirmation during a period for objection, an objection based on an upset bid representing a substantial increase in price precludes confirmation of the original sale. Such a rule will neither undermine the stability of admiralty sales nor deprive initially successful bidders of vested rights. Rather, it represents a reasonable accommodation between the expectations of participants at sales and the goal of obtaining a fair sale price for the vessel.

■ In this case, the district court found that Hinchman's upset bid, $41,000 in excess of the initial sale price, rendered Olney's bid grossly inadequate. While we

might well agree with this conclusion, in order to affirm the court's holding, we need find only that the increase was substantial. This we have no difficulty in doing. Thus, although we find *Ghezzi*'s "grossly inadequate" standard inapplicable to sales conducted and objected to under LAR 11, the district court properly exercised its discretion in refusing to confirm the sale of the Johnny A to Olney.

### The Applicability of LGR 29

The district court held that a new sale was warranted under either LAR 11 or LGR 29. *See supra* at 244. LGR 29 forbids district court confirmation of a judicial sale if, prior to confirmation, a bid at least ten percent higher than the highest bid at the sale is received. *See supra* note 1. Where vessels are typically valued at hundreds of thousands of dollars, an increase in bid of ten percent is a substantial one. Olney's claim that LGR 29 is in conflict with LAR 11 or substantive admiralty law loses force if we view LGR 29 as setting the standard for what is "substantial." Although under LAR 11, the refusal to confirm if any increased bid of ten percent or over is received is not mandatory, it would be an abuse of discretion to confirm the sale to the lower bidder under such circumstances. Thus, the two rules can exist in harmony.

### CONCLUSION

Where admiralty sale procedures provide for a short, set time limit within which objections may be filed, and a substantial increase in bid is filed pursuant to those procedures, the original sale should not be confirmed; rather, a second sale should be held. In the context of an admiralty sale, an increase of ten percent is substantial. The district court thus properly refused to confirm the sale of the Johnny A to Olney both under LAR 11 as augmented by decisional law and under the standard for "substantial disparity" embodied in LGR 29.

AFFIRMED.